### KING HOMES, INC., *v.* JACK BRYSON.

(Filed 28 February, 1968.)

**1. Trial § 21—**

   On motion to nonsuit, the evidence must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may be drawn therefrom.

**2. Same—**

Contradictions and inconsistencies in plaintiff's evidence are for the jury and do not warrant nonsuit.

**3. Automobiles § 5—**

A mobile home is a motor vehicle, G.S. 20-38(17), and is subject to the mandatory provisions of the statutes relating to the registration of motor vehicles in this State. G.S. 20-50, G.S. 20-52, G.S. 20-52(b), G.S. 20-52.1(a), G.S. 20-52.1(c).

**4. Sales § 3—**

A cash sale is one in which the title to the property and the purchase price pass simultaneously, and title remains in the seller until the purchase price is paid, even though possession of the property is delivered to the buyer.

**5. Same—**

Even though the contract be for a cash sale, title will pass to the buyer without payment if the seller by language or conduct waives his right to immediate cash payment, but the acceptance of a check is not such a waiver and if the check is dishonored title does not pass.

**6. Payment § 1—**

In the absence of an agreement to the contrary the giving of a check operates only as a conditional payment until the check is paid.

**7. Sales § 3—**

If the possessor of a chattel has no title, a *bona fide* purchaser from him acquires no property right therein unless the true owner authorizes or ratifies the sale or is estopped to assert his title.

**8. Same—**

In the absence of estoppel, the true owner who is induced to part with possession by fraud may reclaim his chattel from a *bona fide* purchaser from or under the person obtaining such possession, but if the true owner is induced to part with title by fraud, he may not reclaim the chattel from a *bona fide* purchaser from the fraudulent buyer.

**9. Same; Estoppel § 4—**

The fact that he has entrusted the bare possession of a chattel to another does not estop the true owner from denying such possessor's authority to sell or encumber it, but if the true owner invests the possession with *indicia* of title, the true owner is estopped to claim ownership of the chattel as against an innocent purchaser.

**10. Same; Automobiles § 5—    Owner held not estopped to assert title as against innocent purchaser from dealer giving worthless check for cash sale.**

The plaintiff, a manufacturer of mobile homes, delivered a unit to a dealer with instructions for payment by certified check. Upon assurances by the dealer that he had sufficient funds in the bank, the manufacturer accepted the dealer's personal check and gave the dealer possession of the mobile home. The evidence fails to show that plaintiff invested the dealer with a manufacturer's certificate of origin or any other *indicia* of title.

HOMES, INC. *v.* BRYSON.

Thereafter the dealer sold the mobile home to the defendant. The dealer's check was subsequently dishonored. *Held:* Plaintiff's evidence is sufficient to withstand a motion for nonsuit since, assuming the evidence to be true, plaintiff retained title to the mobile home and is not estopped to assert it even against an innocent purchaser.

**11. Appeal and Error § 59—**

On appeal from a judgment of nonsuit, the Supreme Court will discuss the evidence only to the extent necessary to give the reason for the decision and will not attempt to pass on the credibility of the witnesses or to reconcile conflicts in the evidence.

**12. Appeal and Error § 45—**

Exception not discussed in the brief is deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by plaintiff from *Morris, E.J.,* 11 September 1967 Civil Session, TRANSYLVANIA Superior Court.

Plaintiff's evidence would permit the jury to find the following facts:

1. King Homes, Inc. is a manufacturer of mobile homes in Elkhart, Indiana, and prior to 9 January 1964 was the owner of a 1964 model Commander Mobile Home, the subject matter of this action.

2. Twentieth Century Mobile Homes, Inc. of Asheville, North Carolina (Twentieth Century) was a dealer in mobile homes and had handled several King Homes units prior to the one in controversy.

3. The defendant Jack Bryson is a resident of Transylvania County, North Carolina. In November, 1963 he placed with Twentieth Century a custom order for a mobile home. This order was forwarded to plaintiff who manufactured a unit in conformity with the order and delivered it to Twentieth Century to be delivered to defendant Bryson. The original typed invoice dated 9 January 1964, which accompanied the unit, showed $3,938.00 to be due and contained the notation "C.O.D., Certified Check or Bank Money Order, Only!" The Manufacturer's Statement of Origin ordinarily accompanied a mobile home sale as part of the original transaction, but plaintiff's vice president gave contradictory testimony with reference to it. At one point on direct examination he testified that "the invoice, right here, this is a copy of the original accompanied the mobile unit as the mobile unit came down to Twentieth Century, as well as the Statement of Origin"; while at another point in his direct examination he stated that "the paperwriting defined as PX-1, I had that in my possession prior to the time of this sale — that the

purported sale took place from Twentieth Century to Jack Bryson. I have had that in my possession ever since the time that I acquired it. Until the present time, today. There was absolutely no other paperwriting issued regarding this mobile home now and regarding this ownership, other than this paperwriting identified as PX-1." (PX-1 was a plaintiff's Exhibit of "Manufacturer's Statement of Origin to a Motor Vehicle.") Plaintiff's driver delivered the mobile home unit to Twentieth Century at a time when the banks were closed, and it was impossible to get a certified check or a bank money order as stated on the invoice. Upon assurances by Dan Taylor, an official of Twentieth Century, that funds were in the bank to cover a check, plaintiff instructed its driver to accept a check from Twentieth Century and deliver the unit. About a week thereafter, Twentieth Century delivered the mobile home unit to defendant Jack Bryson and received from him the sum of $3,000.00 plus a used trailer in full payment. The Manufacturer's Statement of Origin was never shown or exhibited to defendant, either prior to or at the time of the sale of the unit to him. Defendant later demanded the Statement of Origin from the Twentieth Century salesman and was informed that either the manufacturer or Mr. Dan Taylor had it. It was never delivered to defendant.

4. The check given by Twentieth Century to the plaintiff was returned by the bank upon which it was drawn marked "Insufficient Funds", and plaintiff has never received any sum whatsoever in payment for this mobile home unit. The net purchase price of the unit was $3,938.00, f.o.b. Asheville.

5. Initially, plaintiff was looking to Twentieth Century for payment and did not expect payment from defendant. Plaintiff's vice president, Howard Lesher, came to Asheville to institute a suit against Twentieth Century on the worthless check but refrained from doing so because Dan Taylor, the official of Twentieth Century with whom plaintiff had dealt, was already in jail for reasons not disclosed by the record. No suit has ever been instituted against Twentieth Century or Dan Taylor. Rather, plaintiff instituted this action against defendant Jack Bryson, alleging ownership of the mobile home unit in question and seeking immediate possession of same by claim and delivery or, if actual possession cannot be had, recovery of the sum of $3,938.00 with costs. Defendant posted a replevin bond, retained possession of the property and asserted ownership in himself.

Plaintiff contends that Twentieth Century practiced a fraud upon it to obtain possession of the mobile home unit in question by falsely representing that it had money in the bank upon which its

check was drawn in an amount sufficient to pay the check; that such representation was false to the knowledge of Twentieth Century; that Twentieth Century intended for plaintiff to rely upon such representation, which plaintiff in fact did to its prejudice. Plaintiff further contends that it retained legal title to the property and therefore has a right to repossess it or recover its value even from an innocent purchaser.

Defendant admits plaintiff sold and delivered said mobile home to Twentieth Century and asserts that he bought it in good faith and paid full value without knowledge of any defect in Twentieth Century's title to it. Defendant further pleads that plaintiff is estopped by its conduct to assert title to the property.

Plaintiff offered in evidence (1) Manufacturer's Statement of Origin (PX-1), (2) the worthless check payable to King Homes, Inc., dated January 20, 1964 and signed by Dan Taylor (PX-2), and (3) the invoice for the mobile home dated January 9, 1964 (PX-3).

At the close of plaintiff's evidence, defendant's motion for compulsory nonsuit was allowed and plaintiff appeals.

*S. Thomas Walton, attorney for plaintiff appellant.*
*Redden, Redden & Redden by Monroe M. Redden, Jr., attorneys for defendant appellee.*

HUSKINS, J. It is axiomatic that on motion to nonsuit the evidence must be taken as true and considered in its light most favorable to the plaintiff. Plaintiff is entitled to the benefit of every reasonable inference which may be drawn therefrom. *Insurance Co. v. Storage Co.,* 267 N.C. 679, 149 S.E. 2d 27; *Higdon v. Jaffa,* 231 N.C. 242, 56 S.E. 2d 661. Contradictions and inconsistencies in plaintiff's evidence are for the jury where the evidence, taken in its most favorable light to the plaintiff, makes out a *prima facie* case. *Watt v. Crews,* 261 N.C. 143, 134 S.E. 2d 199; *Nixon v. Nixon,* 260 N.C. 251, 132 S.E. 2d 590; *Smith v. Corsat,* 260 N.C. 92, 131 S.E. 2d 894. All conflicts in plaintiff's evidence must be resolved in his favor. *Raper v. McCrory-McLellan Corp.,* 259 N.C. 199, 130 S.E. 2d 281.

The judgment of nonsuit cannot stand unless (1) defendant acquired title to the property from Twentieth Century, or (2) plaintiff is estopped to deny defendant's title.

A mobile home is classified by statute as a motor vehicle. G.S. 20-38(17). When a manufacturer transfers a new motor vehicle to another he is required, at the time of transfer, to supply the transferee with a manufacturer's certificate of origin assigned to the transferee. G.S. 20-52.1(a). Any dealer who transfers a new ve-

hicle to a consumer-purchaser is required, at the time of transfer, to give the purchaser the proper manufacturer's certificate assigned to the transferee. G.S. 20-52.1(c). (A revision of this subsection contained in Chapter 863 of the 1967 Session Laws was effective June 21, 1967 and has no pertinence here.) A mobile home is designed to be operated upon the highways; and an owner who intends to so operate it is required to make application to the Department of Motor Vehicles for, and obtain, the registration thereof and issuance of a certificate of title for such vehicle. G.S. 20-50; G.S. 20-52. When the application for registration and certificate of title refers to a new vehicle purchased from a manufacturer or dealer, the application must be accompanied by a manufacturer's certificate of origin that has been properly assigned to the applicant. G.S. 20-52(b). These statutes are mandatory and not merely directory. *Hawkins v. Finance Corp.*, 238 N.C. 174, 77 S.E. 2d 669.

In passing on the rights and liabilities of the parties, we must consider the relevant rules of law with respect to cash sales. These rules evolve from many cases in this and other jurisdictions and have been assembled in a scholarly opinion by Ervin, J., in *Wilson v. Finance Co.*, 239 N.C. 349, 355, 79 S.E. 2d 908, 913, and are quoted, except where summarized, as follows:

"1. A cash sale is one in which the title to the property and the purchase price pass simultaneously, and the title remains in the seller until the purchase price is paid, even though possession of the property is delivered to the buyer. [Citations omitted.]

"2. The seller may waive his contractual right to the immediate cash payment of the purchase price in a sale for cash and permit the title to pass to the buyer before the payment of the purchase price is made by language or conduct manifesting an intention on his part to abandon or relinquish his contractual right rather than to insist upon it. [Citations omitted.] But he does not waive his contractual right by taking a check, which subsequently proves to be worthless, in payment for the property sold for cash. [Citations omitted.]

"3. In the absence of an agreement to the contrary, the delivery and acceptance of a check does not constitute payment of the item covered by it until the check itself is paid by the bank on which it is drawn. [Citations omitted.] It necessarily follows that where the seller contracts to sell a chattel to the buyer for cash, and the seller accepts a check from the buyer as a means of payment of the cash and delivers the chattel to the

buyer in the belief that the check is good and will be paid on presentation, no title whatever passes from the seller to the buyer until the check is paid; and the seller may reclaim the chattel from the buyer in case the check is not paid on due presentation. [Citations omitted.]

"4. Even a *bona fide* purchaser of a chattel acquires no property right in it at common law or in equity as against the true owner, if it is sold by a third person who, although in possession, has no title to it, unless the true owner authorizes or ratifies the sale, or is precluded by his own conduct from denying the third party's authority to make it. [Citations omitted.]

"5. . . . [I]n the absence of an estoppel, one is not entitled to protection as a *bona fide* purchaser unless he holds the legal title to the property in dispute. [Citations omitted.] As a consequence, an owner who is induced by the fraud of the buyer to part with the possession of his chattel, and no more, can reclaim it from a *bona fide* purchaser from or under the fraudulent buyer, unless the *bona fide* purchaser can bring himself within the protection of some principle of estoppel. [Citations omitted.] But an owner who is induced by the fraud of the buyer to part with the legal title to his chattel cannot recover it from a *bona fide* purchaser from or under the fraudulent buyer." [Citations omitted.]

6. Although there is a conflict of authority, North Carolina adheres to the rule that on a cash sale of personal property the legal title remains in the seller until the purchase price is paid, even though the seller accepts a check from the buyer as a means of payment of the cash and delivers the property to the buyer. *Motor Co. v. Wood,* 237 N.C. 318, 75 S.E. 2d 312.

7. The true owner of a chattel may deny the authority of its possessor to sell or encumber it and is not estopped to do so merely because he entrusts the possessor with its possession. However, if the true owner entrusts the possession of his chattel to another and at the same time clothes him with the *indicia* of title to it, the true owner is estopped to claim ownership as against an innocent purchaser who pays value to the possessor in reliance on the *indicia* of title. *Hawkins v. Finance Corp., supra* (238 N.C. 174, 77 S.E. 2d 669) ; *Motor Co. v. Wood, supra.*

Applying the foregoing principles of law to the evidence, considered in its light most favorable to plaintiff as we are required to do, it is apparent that title to the mobile home in question remained

in the plaintiff and never passed to Twentieth Century because its check was dishonored by the bank upon which it was drawn. Since the evidence, when considered most favorably to plaintiff, fails to show that plaintiff invested Twentieth Century with the Manufacturer's Certificate of Origin or any other *indicia* of title upon which defendant relied, plaintiff is not estopped on this record from asserting its title even against an innocent purchaser. *Hawkins v. Finance Corp., supra; Bank v. Winder,* 198 N.C. 18, 150 S.E. 489; *Motor Co. v. Wood, supra; Ellison v. Hunsinger,* 237 N.C. 619, 75 S.E. 2d 884. In case of a bailment of personal property for purpose of sale, the result is the same. Nothing else appearing, mere possession by bailee of the bailor's goods, with authority as agent to sell them, works no estoppel upon the bailor to deny the title of an innocent purchaser. *Hawkins v. Finance Corp., supra;* 8 Am. Jur. 2d, Bailments § 92.

Assuming the truth of plaintiff's evidence, as we must when evaluating a motion for nonsuit, defendant acquired no title to the mobile home from Twentieth Century, and plaintiff is not estopped to assert its title to the property in controversy.

The defendant has not been heard. We have considered only the plaintiff's evidence most favorable to it. As stated by Higgins, J., for the Court, in *Poindexter v. Bank,* 244 N.C. 191, 92 S.E. 2d 773, "It is generally the practice of this Court when a judgment of nonsuit is reversed and the case sent back to the Superior Court for trial on the merits, to discuss the evidence only to the extent necessary to give the reason for the decision. This Court does not attempt to pass on the credibility of the witnesses or to reconcile conflicts in the evidence." Our review of the evidence for purposes of this decision is not intended to influence the jury at the trial.

Plaintiff's remaining exception is not discussed in its brief and is deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810; *State v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781; *State v. Cole,* 270 N.C. 382, 154 S.E. 2d 506.

For the reasons stated, we are of the opinion that plaintiff's evidence makes out a case for the twelve whose prerogative it is to pass upon its weight and credibility. *State v. Squires,* 272 N.C. 402, 158 S.E. 2d 345. Judgment of nonsuit was improvidently entered and is

Reversed.