In re Judy M. CARRAWAY, Debtor.

James Oliver CARTER,
Trustee, Plaintiff,

v.

William Raeford HOLLAND, and Judy M. Carraway, Defendants.

Bankruptcy No. S-85-01659-7.
Adv. No. S-86-0004-AP.

United States Bankruptcy Court,
E.D. North Carolina.

July 16, 1986.

James Oliver Carter, Wilmington, N.C., trustee.

Joseph N. Callaway, Rocky Mount, N.C., for William Raeford Holland.

Christopher B. Godwin, Fayetteville, N.C., for Judy M. Carraway.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

This is an adversary proceeding brought by James Oliver Carter, the chapter 7 trustee for the estate of Judy M. Carraway, to avoid an unperfected lien on a mobile home pursuant to 11 U.S.C. § 544(a) and to recover two prebankruptcy payments as preferential transfers pursuant to

11 U.S.C. § 547(b). The trial was held in Raleigh, North Carolina on July 7, 1986.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F), (K) and (O), which this court may hear and determine. *In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927 (Bankr.E.D. N.C.1986).

## FACTS

Judy M. Carraway filed a voluntary petition under chapter 7 of the Bankruptcy Code on September 27, 1985. James Oliver Carter was appointed trustee.

In the spring of 1984 Ms. Carraway went to White Lake Realty to locate a home to rent or to purchase in White Lake, North Carolina. She was shown a 12 feet × 65 feet, 1974 Fleetwood HT Trailer (Serial # S5454), owned by William R. Holland of Elizabethtown, North Carolina located on a lot in the Culbreth Trailer Park owned by J.L. Culbreth. The mobile home, which Mr. Holland had listed for sale with White Lake Realty was not permanently affixed to the lot and could be easily moved by unhooking a strap and removing several blocks.

Ms. Carraway met with Mr. Holland and agreed to the sale terms which were included in a "Contract of Sale" (Plaintiff's Exhibit # 1) which was executed on June 1, 1984. The contract identified Mr. Holland as the "Seller" and Ms. Carraway as the "Purchaser." The sales price was $13,025 (including a $525 pro-ration of a $900 per year lot rental previously paid by Mr. Holland to Mr. Culbreth) and was to be paid by a $3,525 payment upon execution of the Contract of Sale and the balance, plus interest at the rate of 12% per annum, in 36 monthly payments of $283.33.[1] The bal-

---

1. A $1,000 deposit was also made by Ms. Carraway and is included as part of the $3,525 down payment.

ance could be "prepaid" without penalty on or before January 1, 1985, but, if the balance was not paid by that date, "the Seller shall have the right to assess interest against the Purchaser as if the Purchaser had paid all thirty-six (36) monthly payments." (Contract of Sale, ¶¶ 4–6).

Ms. Carraway, as purchaser, agreed to make all lease payments to the lot owner (Contract of Sale, ¶ 7), and to pay all taxes and special assessments (Contract of Sale, ¶ 11).

Ms. Carraway also agreed to keep the mobile home insured and the Seller was given the right to receive and apply any insurance proceeds "on the account of the indebtedness secured hereby." (Contract of Sale, ¶ 9).

In the event of Ms. Carraway's default, the contract gave Mr. Holland the remedy of terminating the agreement, taking possession of the mobile home and keeping all sums paid by Ms. Carraway (Contract of Sale, ¶ 13(a)). Alternatively, the contract gave Mr. Holland the right to "accelerate the payment of all sums due" under the contract, to take possession of the mobile home, and to recover all costs including a reasonable attorney's fee (Contract of Sale, ¶ 13(b)).

Paragraph 8 of the contract provided that

> upon completion of the payments of the purchase price as required herein, the Seller shall convey to the Purchaser title to the hereinabove described property by executing the proper documents to secure a change of title to said mobile home.

Both Mr. Holland and Ms. Carraway understood that the certificate of title to the mobile home would not be transferred to Ms. Carraway until the balance of the purchase price plus interest was paid in full.

Prior to June 1, 1984, the certificate of title (North Carolina # 416713855B) to the mobile home was in the name of William Raeford Holland unencumbered by any liens. The certificate of title was not changed in any way after execution of the Contract of Sale, either to reflect that Ms.

Carraway was the owner or to indicate that Mr. Holland was a lienholder.

Ms. Carraway took possession of the mobile home on June 1, 1984, and was in possession of the mobile home when her petition was filed on July 25, 1985. Mr. Holland paid White Realty a commission of 10% for handling the transaction.

From the evidence presented, the court finds that the arrangement between Ms. Carraway and Mr. Holland was intended to be a conditional sale with the retention by Mr. Holland of a security interest in the mobile home.

The parties agree that if Mr. Holland's lien is unperfected, two payments of $282.33 each meet the requirements of 11 U.S.C. § 547(b) and would be avoidable preferential transfers.

## DISCUSSION AND CONCLUSIONS

The trustee maintains that the transaction between Mr. Holland and Ms. Carraway was a sale with the retention by Mr. Holland of a security interest. Mr. Holland argues that, because the certificate of title shows that he is the owner of the mobile home, Ms. Carraway has no legal or equitable interest in the mobile home and that the sale was not complete.

Mr. Holland relies on two cases from the North Carolina Supreme Court which he contends say that ownership of a motor vehicle, including a mobile home, remains with the vendor until a new certificate of title is assigned and delivered. *International Service Insurance Co. v. Iowa National Mutual Insurance Co.*, 276 N.C. 243, 172 S.E.2d 55 (1970), and *Nationwide Mutual Insurance Co. v. Hayes*, 276 N.C. 620, 174 S.E.2d 511 (1970). Those cases, however, only hold that

> [t]he provisions of the Uniform Commercial Code do not override the earlier Motor Vehicle statutes relating to the transfer of ownership of motor vehicles for the purpose of *tort law and liability insurance coverage* (emphasis added). *Nationwide Mutual Insurance Co. v. Hayes*, 276 N.C. 620, 640, 174 S.E.2d 511.

The North Carolina Supreme Court in a later decision said that the *Hayes* decision "left open the question whether MVA [the North Carolina Motor Vehicle Act], as opposed to the U.C.C., would control in all circumstances." *American Clipper Corp. v. Howerton,* 311 N.C. 151, 162, 316 S.E.2d 186 (1984).

The transaction was clearly intended by all concerned to be a sale with the retention by the seller of a security interest. The agreement was entitled "Contract of Sale," Mr. Holland is identified as the "Seller," and Ms. Carraway is identified as the "Purchaser." Ms. Carraway, as purchaser, was obligated to repay the sales price plus interest, to pay the lot rent, to pay the taxes, to pay special assessments, and to provide insurance which was to be applied to the "indebtedness secured."

Article 9 of the Uniform Commercial Code applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property...." N.C.GEN.STAT. § 25–9–102(1)(a) (Supp.1985). U.C.C. Article 9 specifically applies to security interests created by "conditional sale" and "other lien or title retention contract." N.C.GEN.STAT. § 25–9–102(2) (Supp.1985). Each provision of Article 9 "with regard to rights, obligations and remedies applies whether title to the collateral is in the secured party or in the debtor." N.C.GEN.STAT. § 25–9–202 (Supp.1985).

> The definition of security interest contained in Section 25–1–201 further provides that the reservation of title by the seller amounts only to a security interest, and therefore does not have the effect of keeping title vested in the seller. R. Lord and C. Lewis, *North Carolina Security Interests,* § 2, at 3 (1985).

The fact that the certificate of title reflected that Mr. Holland was the owner of the mobile home is immaterial to whether Article 9 applies. The ownership indicated on the certificate of title may have a bearing on tort liability under North Carolina law, but Article 9 applies to the transaction regardless of whom the certificate lists as the owner.

Mr. Holland's argument that the debtor has no legal or equitable title to the mobile home because the certificate of title shows Mr. Holland as the owner is unpersuasive.

The North Carolina Motor Vehicle law defines the owner of a motor vehicle as

> [a] person holding the legal title to a vehicle or in the event a vehicle is the subject of a chattel mortgage or an agreement for the conditional sale or lease thereof or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with the immediate right of possession vested in the mortgagor, conditional vendee or lessee, said mortgagor, conditional vendee or lessee shall be deemed the owner for the purpose of this Chapter. For the purposes of this Chapter, the lessee of a vehicle owned by the government of the United States shall be considered the owner of said vehicle. N.C.GEN.STAT. § 20–4.01(26) (1983).

Under that definition, Ms. Carraway, not Mr. Holland, is the "owner." Also, under 11 U.S.C. § 541(a), Ms. Carraway's interest in the mobile home is part of her bankruptcy estate, notwithstanding the fact that legal title as shown on the certificate of title belongs to Mr. Holland.

While the provisions of Article 9 of the Uniform Commercial Code apply to most aspects involving a security interest in personal property, the Article 9 filing system is "bypassed" with respect to motor vehicles covered by a state certificate of title. B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 12.3, at 12–10 (1980). If personal property is covered by a certificate of title issued under a state statute which requires an indication of the security interest on the certificate of title, perfection is governed by the law of the jurisdiction which issued the certificate. N.C.GEN.STAT. § 25–9–103(2)(a) (Supp.1985). In North Carolina, perfection of a security interest in an automobile is accomplished by noting the lien on the certificate of title. N.C.GEN.STAT.

§ 25–9–302(3)(b) and (4) (Supp.1985) and N.C.GEN.STAT. § 20–58(2) (1983). A security interest in a mobile home is subject to the same perfection requirements as is an automobile. *King Homes, Inc. v. Bryson*, 273 N.C. 84, 159 S.E.2d 329 (1968). The date of perfection is established by N.C.GEN.STAT. § 20–58.2 which says

> [i]f the application for notation of security interest with the required fee is delivered to the Division within 10 days after the date of the security agreement, the security interest is perfected as of that date. Otherwise, the security interest is perfected as of the date of delivery of the application to the Division.

█ Clearly, Mr. Holland did not comply with the technical requirements of noting the lien on the certificate of title. In similar circumstances involving financing leases where the "lienholder" was listed as the owner on the certificate of title, many courts have held that the security interest was perfected because there was substantial compliance with the perfection requirements under U.C.C. § 9–402(8).[2] *In re Load-It, Inc.*, 774 F.2d 1077 (11th Cir.1985); *In re Circus Time*, 641 F.2d 39 (1st Cir. 1981). *See also, In re Coors of the Cumberland, Inc.*, 19 B.R. 313 (Bankr.M.D. TN 1982); *In re Trivett*, 12 B.R. 373 (Bankr. E.D. TN 1981); *In re Yeager Trucking*, 29 B.R. 131 (Bankr.D. CO 1983); *Matter of Skyland, Inc.*, 28 B.R. 354 (Bankr.W.D. MI 1983); *In re McCall*, 27 B.R. 106 (Bankr.W. D.N.Y.1983); *contra, In re National Welding of Michigan, Inc.*, 17 B.R. 624 (Bankr.W.D. MI 1982).

Mr. Holland never made the argument that he had substantially complied with the filing requirements, electing instead to stand firmly behind his "no transfer of ownership" defense.

Notwithstanding the case law which supports a determination that Mr. Holland's security interest is perfected under U.C.C.

§ 9–402(8), the court is reluctant to so hold since N.C.GEN.STAT. § 25–9–402(8) was never raised by Mr. Holland, and consequently the trustee has not been given the opportunity to be heard on that issue.

One of the trustee's defenses to the substantial compliance standard of N.C.GEN. STAT. § 25–9–402(8), that Mr. Holland may not have proceeded in good faith, is apparent from the face of the Contract of Sale. Not only did Mr. Holland not comply with the perfection requirements of Article 9 and the motor vehicle laws, he also ignored several provisions of Article 9 designed to protect the rights of the debtor. Under U.C.C. Article 9 a debtor is given the right of redemption (N.C.GEN.STAT. § 25–9–506 (Supp.1985)) and the right to have repossessed collateral sold in a commercially reasonable manner. (N.C.GEN.STAT. §§ 25–9–504 and 25–9–505 (Supp.1985)). The Contract of Sale purports to deny Ms. Carraway those rights (Contract of Sale, ¶ 13). Mr. Holland also included a provision which is in effect a prepayment penalty (Contract of Sale, ¶¶ 4–6) which may violate the prohibition found in the North Carolina Usury laws against such penalties in these circumstances. N.C.GEN.STAT. § 24–1.2(6) (Supp.1985).

The Uniform Commercial Code requires that "[e]very contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement." N.C. GEN.STAT. § 25–1–203 (1965). Should a court of equity excuse a secured creditor from complying with the technical requirements of perfection when that creditor has not proceeded in good faith and has attempted to deny the debtor the benefits of the basic protections provided by Article 9?

If the court is hesitant to find substantial compliance under N.C.GEN.STAT. § 25–9–402(8) without giving the trustee an opportunity to be heard, the court is equally uneasy about denying to Mr. Holland the benefit of N.C.GEN.STAT. § 25–9–402(8)

---

**2.** N.C.GEN.STAT. § 25–9–402(8) provides:

A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

for lack of good faith without giving him the opportunity to address that issue.

Accordingly, the court will set a status conference, perhaps by telephone conference call, to ascertain the parties' desire to present further evidence or to be heard with respect to the applicability of N.C. GEN.STAT. § 25–9–402(8) to this proceeding.

SO ORDERED.