In re Charles Raymond MEADE and Belinda Carlene Meade, Debtors.

Bankruptcy No. B–94–50148C–7W.

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

July 28, 1994.

Wendell Schollander, Winston–Salem, NC, for debtors.

W. Joseph Burns, Winston–Salem, NC, for trustee.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

The matter before the court is a motion for relief from automatic stay filed on behalf of Margaretten & Company, Inc. ("Margaretten"), which was objected to by the trustee. Margaretten seeks relief from the automatic stay in order to foreclose on the "lot and improvements" located at 4350 Ben Lane, Walkertown, North Carolina. The dispute arises from the fact that the primary improvement on the property is a doublewide mobile home which was placed on the property in 1989 by R. Don Cain who at that time was a dealer in mobile homes as well as a land developer. The property was conveyed to the debtors solely by means of a general warranty deed from Cain. In connection with financing the purchase of the property, the debtors executed and delivered to Margaretten's predecessor a deed of trust containing the legal description for the lot in question, which deed of trust was duly recorded in Forsyth County immediately after the deed from Mr. Cain was recorded. Both instruments were dated July 11, 1989, and both were recorded on July 12, 1989. Margaretten contends that the mobile home was permanently affixed to the real property at the time of conveyance and, therefore, is subject to the encumbrance created by its deed of trust. On the other hand, the trustee contends that since the improvement was a mobile home, the only method of perfecting a lien on the mobile home was to have a lien entered on a certificate of title for the mobile home. Therefore, the trustee argues that the deed of trust created an encumbrance on the land but not on the improvement.

## FACTS

For purposes of this motion, the parties have entered into the following stipulations of fact:

1. On March 19, 1988, R. Don Cain, a/k/a Don Cain Development, d/b/a R.D. Cain Mobile Homes, P. O. box 846, Walkertown, North Carolina 27051, (hereinafter the "Cain"), purchased two sections of manufactured housing, (hereinafter the "doublewide"), from Fleetwood Homes of North Carolina, Inc., manufacturer, such sale being evidenced by the Manufacturer's Statement or Certificate of Origin to a Manufactured Home, identifying the sections by Manufacturer's ID Nos. NCFLH69A01350BH and NCFLH69B01350BH.

2. Thereafter, Cain, a duly licensed mobile home dealer, as owner and developer of a subdivision in Salem Chapel Township, Forsyth County, North Carolina, upon purchasing the new doublewide from the manufacturer, attached it to a fixed, permanent foundation on Lot No. 147 of the R. Don Cain Property, Phase III, as described and recorded in Plat Book 33 at page 138 in the Office of the Register of Deeds of Forsyth County, North Carolina.

3. Thereafter, on July 11, 1989, Cain and his wife, sold the property, consisting of the above described lot and doublewide, to Charles R. Meade and wife, Belinda C. Meade, (hereinafter "debtors"), by warranty deed dated July 11, 1989, recorded on July 12, 1989, in Book 1671, page 1330, of the Forsyth County, North Carolina Public Registry.

4. Debtors financed the purchase of this property from Cain by a loan in the original amount of $43,620.00 from Sovran Mortgage Corporation, now known as Margaretten & Company, Inc., the loan being evidenced by a Note, dated July 11, 1989.

5. The aforementioned loan for $43,620.00 was purportedly secured by the lien on a deed of trust from debtors, dated July 11, 1989, on property described as follows: "Being Known and Designated as Lot Number 147 of the R. Don Cain Property, Phase III, as recorded in Plat Book 33 at page 138, in the Office of the Register of Deeds of For-

syth County, North Carolina". The deed of trust was duly recorded in Book 1671 at page 1136, in the Office of the Register of Deeds for Forsyth County, North Carolina.

6. At no time did Cain make application for a certificate of title to the doublewide, either prior to or after the above described sale to debtors, and no certificate of title has ever been issued by the Division of Motor Vehicles for this property. The certificates of origin were retained by Cain in his permanent record file at his office and were recently secured from him and are presently in the possession of movant's counsel, Richard P. McNeely.

7. The intent of all the parties to the aforementioned sale to debtors was that the transaction was a sale of real estate, both as to the transfer and financing of same.

8. The Forsyth County Tax Collector classifies the property as a doublewide included in real estate, with assigned values of land in the amount of $11,800.00 and building $37,900.00.

9. Debtors filed the Chapter 7 petition herein on February 24, 1994.

10. Debtors did not exempt the subject property.

11. Margaretten & Company, Inc., through counsel, filed a motion for relief from stay herein on April 22, 1994.

12. Objection to the requested relief was filed and served on April 29, 1994, by W. Joseph Burns, Attorney for Trustee.

13. Appropriate orders continuing the automatic stay in effect have been entered by this court pending resolution of this contested matter.

### DISCUSSION

It is clear under North Carolina law that a mobile home is "motor vehicle" for purposes of the statutes dealing with registration and ownership of motor vehicles. In that regard, G.S. § 20-4.01(23) defines a motor vehicle as every vehicle "which is self-propelled *and* every vehicle *designed* to run upon the highways which is pulled by a self-propelled vehicle. . . ." (Emphasis supplied). Since a mobile home is *designed* to run upon the highways while being pulled by a self-propelled vehicle, it falls within this definition. *Eg., King Homes, Inc. v. Brison,* 273 N.C. 84, 159 S.E.2d 329 (1968).

The next question is whether the "motor vehicle" in this case (i.e., the doublewide mobile home) was required to be registered with the Division of Motor Vehicles and a certificate of title issued. This is critical because the North Carolina statutes require that security interests in vehicles requiring registration and certificates of title may be perfected only if recorded on the certificate of title. G.S. § 20-58.

G.S. § 20-50 is entitled "Owner to secure registration and certificate of title; temporary registration markers." It would appear that this statute would be the starting point for determining when a motor vehicle (or a mobile home) must be registered in North Carolina. This statute provides as follows:

"(a) Except as otherwise provided in this Article, every owner of a vehicle intended to be operated upon any highway of this state and required by this Article to be registered shall, before the same is so operated, apply to the Division for and obtain the registration thereof, the registration plates therefore and a certificate of title therefore, and attach the registration plates to the vehicle, except when an owner is permitted to operate a vehicle under the registration provisions relating to manufacturers, dealers and nonresidents contained in G.S. § 20-79, or under temporary registration plates as provided in this Article. . . ."

It would further appear that if either Cain or the Meades were required to have registered the doublewide and had done so, then a certificate of title would have been issued as a matter of course and there would be a requirement that any lien upon the doublewide be entered on the certificate of title. Margaretten concedes that in that event (i.e., in the event a certificate of title should have been issued) it does not have a perfected security interest, since its security interest was never entered on a certificate of title for the mobile home. However, Margaretten argues that in this case no registration or

certificate of title was required for the doublewide and, therefore, Margaretten can and does have a valid lien based upon the deed of trust which was obtained from the Meades and duly recorded in Forsyth County.

With regard to Cain, Margaretten argues that the exception in G.S. § 20–50 "relating to manufacturers, dealers and nonresidence contained in G.S. § 20–79" is applicable. This appears to be a correct position based upon the language which was contained in G.S. § 20–79 when Cain acquired the doublewide from the manufacturer and when Cain deeded the real property containing the doublewide to the Meades. At that time, G.S. § 20–79 provided as follows:

"Every manufacturer of or dealer in motor vehicles shall obtain and have in his possession a certificate of title issued by the Division to such manufacturer or dealer of each vehicle owned and operated upon the highways by such manufacturer or dealer, *except that a certificate of title shall not be required or issued for any new vehicle to be sold as such by a manufacturer or dealer prior to the sale of such vehicle by the manufacturer or dealer;* and except that any dealer or any employee of any dealer may operate any motor vehicle, trailer or semi-trailer, the property of the dealer, for the purpose of furthering the business interest of the dealer in the sale, demonstration and servicing of motor vehicles, trailers and semi-trailers, of collecting accounts, contacting prospective customers and generally carrying out routine business necessary for conducting a general motor vehicles sales business." (Emphasis supplied).

Cain falls squarely within the exception contained in the above quoted language since he was a dealer, the doublewide was a new vehicle and Cain was merely retaining possession and ownership of the doublewide until he could sell it.[1] It follows, therefore, that Cain was not required to obtain a certificate of title before he transferred the lot and doublewide to the Meades.

This leaves the question of whether the Meades, in connection with acquiring owner-ship of the doublewide, were required to obtain a certificate of title. Margaretten argues that the Meades were not required to obtain a title, based upon the language of G.S. § 20–50 which provides that "every owner of a vehicle *intended to be operated upon any highway* of this State and required by this Article to be registered shall, before the same is so operated, apply to the Division for and obtain the registration thereof...." (Emphasis supplied). Margaretten points out that at the time of the transfer to the Meades, the doublewide had been permanently affixed to the real estate in that the wheels and tongue had been removed and the doublewide had been placed on a brick foundation located on the land. Since the mobile home was permanently affixed to the land, Margaretten argues that the parties obviously did not intend for the doublewide to be operated upon the highways and therefore were not required by G.S. § 20–50 to register the vehicle. This is borne out by the stipulation that it was the intent of all the parties that the transaction was a sale of real estate. The factual basis for this argument is sound, since all of the facts indicate that the mobile home had been permanently affixed and that there was no intention that it would be operated upon the highways of this State. The legal conclusion drawn by Margaretten, i.e., a motor vehicle which is not intended to be driven on the highways of the State does not have to be registered, is less clear. This is true because the North Carolina statutes dealing with registration of motor vehicles are somewhat confusing. However, the statutory interpretation and legal argument advanced by Margaretten is supported by North Carolina case law and appears to be correct. The North Carolina Supreme Court, in discussing the status of mobile homes under the North Carolina registration statutes, in *King Homes, Inc. v. Brison,* 273 N.C. 84, 159 S.E.2d 329 (1968), said:

"A mobile home is classified by statute as a motor vehicle G.S. § 20–38(17). When a manufacturer transfers a new motor vehicle to another he is required, at the time of transfer, to supply the transferee with a manufacturer's certificate of origin as-

---

1. G.S. § 20–79 was amended extensively in 1993 and no longer contains this language.

signed to the transferee. G.S. § 20–52.1(a). Any dealer who transfers a new vehicle to a consumer-purchaser is required, at the time of transfer, to give the purchaser the proper manufacturer's certificate assigned to the transferee. G.S. § 20–52.1(c). (A revision of this subsection contained in Chapter 863 of the 1967 session laws was effective June 21, 1967 and has no pertinence here). A mobile home is designed to be operated upon the highways; *and an owner who intends to so operate it* is required to make application to the Department of Motor Vehicles for, and obtain, the registration thereof and issuance of a certificate of title for such vehicle. G.S. § 20–50; G.S. § 20–52. When the application for registration and certificate of title refers to a new vehicle purchased from a manufacturer or dealer, the application must be accompanied by a manufacturer's certificate of origin that has been properly assigned to the applicant. G.S. § 20–52(d). These statutes are mandatory and not merely directory." (Emphasis supplied). 159 S.E.2d at 332.

This language supports Margaretten's position in that the portion of the language stating when an owner must register a mobile home is limited to an owner who intends to operate it on the highway, suggesting that if the owner does not intend to operate the mobile home on the highway, he or she is not required to register it with the Department of Motor Vehicles. Given the specific language of G.S. § 20–50 and the interpretation of that language in the *King Homes* case, the court concludes that there was no requirement that the doublewide in this case be registered or that a certificate of title be issued because the unit had been permanently affixed to the land and there was no intention on the part of either the transferor or the transferee that it would be operated upon the highways of the State of North Carolina.[2]

Margaretten correctly points out that the present case is distinguishable from cases such as *Peoples Savings & Loan Assn v. CitiCorp Acceptance Corp.,* 103 N.C.App. 762, 407 S.E.2d 251 (1991), *review denied,* 330 N.C. 197, 412 S.E.2d 59 (1991), in which the owner did intend to transport the mobile home on the highways. The mobile home therefore was registered with the Division of Motor Vehicles and a certificate of title issued. If the owner does intend to move the mobile home on the highways, then registration is required by G.S. § 20–50, which brings into play G.S. § 20–58, which requires that security interests be perfected by recordation on the title certificate for the mobile home. As pointed out in *Peoples Savings & Loan Assn v. CitiCorp Acceptance Corp., supra,* once the title certificate has been issued for such a mobile home and a creditor has perfected a lien upon the mobile home by registering its lien on the title certificate, the mobile home does not lose its status as a mobile home merely because the owner thereafter permanently affixes it to the land. Therefore, the secured creditor with a lien on the title prevails over a subsequent creditor who takes a deed of trust on the land and

---

**2.** This conclusion is not inconsistent with G.S. § 20–52 which specifies the procedure to be followed in registering a vehicle with the Division of Motor Vehicles. By its terms, G.S. § 20–52 is applicable only to owners of vehicles "subject to registration" under Chapter 20, Article 3 of the General Statutes. The result is that G.S. § 20–50 is controlling on *which* vehicles must be registered (vehicles intended to be operated on the highways), while G.S. § 20–52 is controlling on *how* to do so. G.S. 20–52.1 is a continuation of G.S. § 20–52 and specifies the procedure to be followed in registering new vehicles. G.S. § 20–52.1 provides that the certificate of origin for a new vehicle is to be delivered to the purchaser or to the lienholder if the purchaser is financing the purchase of the new vehicle. However, G.S. § 20–52.1, like G.S. § 20–52, is procedural in nature and G.S. § 20–50 remains controlling on

whether a vehicle must be registered in the first instance. In the present case, under G.S. § 20–50 the Meades were not required to register their new mobile home with the Division because they did not intend to operate it on the highways. Therefore, even if the certificate of origin had been delivered by Cain, there was no requirement that it be submitted to the Division with an application for a certificate of title absent any intention that the mobile home was to be operated on the highways. Further, although G.S. § 20–52.1 speaks in terms of the lienholder submitting the certificate of origin to the Division "together with the transferee's application for certificate of title", this requirement would not be applicable in a situation in which the transferee was not required to register a new vehicle and therefore would not be submitting an application for a certificate of title to the Division.

mobile home. In the *CitiCorp.* case, the court stated:

"In order to move the mobile home to Johnston County, the purchaser was required to have a certificate of title, which he applied for and received. Defendant properly perfected its security interest which is valid against subsequent creditors such as plaintiff." 407 S.E.2d at 253.

In the present case, the purchaser did not need to transfer the mobile home along the highways and had no intention of doing so. Consequently, unlike the situation in the *CitiCorp* case, the purchaser was not required to register the mobile home nor to obtain a certificate of title. G.S. § 20–58 requires that a security interest be recorded on a certificate of title only if the vehicle is one which must be registered with the Division of Motor Vehicles and a certificate of title obtained. The mobile home involved in the present case was not such a vehicle since neither the transferor nor the transferee intended that the vehicle would be operated upon any highway of this State. As stipulated by the parties, the mobile home was permanently affixed to the land when the property was deeded to the debtors and all parties intended the transaction to be one involving the sale of real property. Consistent with this intention and the fact that the mobile home was permanently affixed to the land, Margaretten has a valid lien upon both the land and the mobile home pursuant to its deed of trust. Since Margaretten has a valid lien and good cause for relief from stay was conceded if a valid lien existed, an order will be entered contemporaneously herewith lifting the stay so that Margaretten may proceed with foreclosure under its deed of trust.

### *ORDER*

Pursuant to the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED, ADJUDGED AND DECREED as follows:

(1) The motion for relief from stay filed on behalf of Margaretten & Company, Inc. ("Margaretten") is granted and the automatic stay pursuant to § 362 is modified in order to permit Margaretten to foreclose upon the

deed of trust from the debtors recorded in Book 1671, page 1136 in the Forsyth County Registry; and

(2) In the event that any excess proceeds are derived from any such sale, Margaretten shall cause such excess proceeds to be paid to the Trustee.