**In re Ronald Otto WESTER, and Sandra Lee Wester, Debtors.**

**Algernon L. Butler, Jr., Trustee in Bankruptcy for Ronald Otto Wester and Sandra Lee Wester, Plaintiff,**

v.

**Green Tree Financial Servicing Corp., Defendant.**

**Bankruptcy No. 96–06181–8–JRL.**
**Adversary No. L–97–00114–8–AP.**

United States Bankruptcy Court,
E.D. North Carolina,
Wilmington Division.

Dec. 11, 1998.

Algernon L. Butler, III, Butler & Butler (Law Firm), Wilmington, for Plaintiff.

Shawna Y. Staton, Jordan, Price, Wall, Gray & Jones, L.L.P. (Law Firm), Raleigh, for Defendant.

### ORDER

J. RICH LEONARD, Bankruptcy Judge.

In this adversary proceeding, the trustee asserts that Green Tree failed to perfect its security interest in the debtors' mobile home prior to the petition date and therefore seeks to avoid Green Tree's lien as a hypothetical lien creditor. A trial was held on November 6, 1998 in Wilmington, North Carolina.

*Stipulated Facts*

1. On July 24, 1996, mobile home manufacturer, Heartland Homes, Inc., transferred a 1997 Heartland mobile home to Hardister and Miller Homes d/b/a Choicecenter ("Hardister"), a duly licensed mobile home dealer. The mobile home was manufactured with, and transported upon, its own chassis, wheels, and towing tongue.

2. On October 8, 1996, H & N Properties transferred a parcel of real estate known as Lot # 2, Edgewood Subdivision at 113 Winchester Lane, Rocky Mount, Pender County, North Carolina, to Mr. Wester by warranty deed recorded in the Register of Deeds of Pender County on October 22, 1996.

3. Sometime prior to October 8, 1996, the mobile home was transported in two sections to the real property on its own chassis, wheels, and towing tongue. The mobile home was placed on concrete brick piers and connected to water and septic facilities. Brick was installed between the ground and lower portion of the mobile home for cosmetic and insulation purposes, but did not serve to support the mobile home.

4. On October 21, 1996, the debtors purchased the mobile home by executing a promissory note in favor of Green Tree, as the loan servicer for Hardister, in the principal amount of $65,700.00. In connection therewith, Mr. Wester executed a security agreement granting Green Tree a security interest in both the mobile home and real property. The debtors also executed a deed of trust granting Green Tree a security interest in the real property. The deed of trust specifically includes the mobile home as part of the security.

5. Also on October 21, 1996, Mr. Wester signed a North Carolina Division of Motor Vehicle ("Division") title application for the mobile home which recited Green Tree's lien on the mobile home.

6. On October 22, 1996, Green Tree properly recorded the deed of trust to the real property upon which the mobile home was located in the Register of Deeds of Pender County.

7. On December 3, 1996, Hardister transferred the mobile home to Mr. Wester by a

first assignment of the manufacturer's statement of origin. The assignment indicated the mobile home was subject to Green Tree's lien.

8. On December 5, 1996, the debtors filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code.

9. On January 9, 1997, the Division issued a certificate of title to the mobile home evidencing Green Tree as the first lienholder. Since Green Tree had failed to deliver the application within 20 days of execution of the security agreement, the date of perfection of the security interest was the post-petition date the application was actually delivered to the Division on December 23, 1996. N.C. GEN. STAT. § 20–58.2.

10. During all relevant times following placement of the mobile home on the real property, the mobile home could be broken down into units and transported on its own chassis, wheels, and towing tongue, after reinstallation as necessary.

## Discussion

■ Green Tree contends that the mobile home was permanently affixed to the real property at the time of the conveyance of the real property, and therefore, its security interest in the mobile home was perfected by properly recording the deed of trust prepetition. The trustee, on the other hand, contends that the sole method of perfecting a security interest in a mobile home is by proper notation of the lien on the certificate of title. Since the bankruptcy filing intervened between recording of the deed of trust and notation of the lien on the certificate of title, the trustee contends Green Tree is unperfected and thus, acting as a hypothetical lien creditor, seeks to avoid the lien under § 544. Therefore, the issue before the court is whether, under North Carolina law, notation of a lien on the certificate of title is the sole method of perfecting a security interest in a mobile home, or whether a properly recorded deed of trust identifying as collateral the real property upon which the mobile home is located may also serve to perfect the security interest in the mobile home.

Initially, the court must determine whether the mobile home, in which Green Tree possesses a purchase money security interest, is a consumer good subject to automatic perfection under G.S. § 25–9–302(1)(d) or a motor vehicle subject to the perfection requirements of G.S. § 20–58. G.S. § 25–9–302(1) sets forth exceptions to the general rule that a security interest is perfected by filing a financing statement. This provision provides:

(1) A financing statement must be filed to perfect all security interests except the following: ...

(d) a purchase money security interest in consumer goods; but compliance with G.S. § 20–58 et seq. is required for a motor vehicle required to be registered; and a fixture filing is required for priority over conflicting interests in fixtures to the extent provided in G.S. § 25–9–313.

N.C. GEN. STAT. § 25–9–302(1).

It has long been recognized that a mobile home is classified as a "motor vehicle" for purposes of the North Carolina statutes dealing with registration and ownership of motor vehicles. *See In re Meade,* 174 B.R. 49, 51 (Bankr.M.D.N.C.1994); *King Homes, Inc. v. Brison,* 273 N.C. 84, 159 S.E.2d 329, 332 (N.C.1968); *Hughes v. General Elec. Capital Corp.,* 115 N.C.App. 325, 444 S.E.2d 248, 250 (N.C.Ct.App.1994); *Peoples Sav. & Loan Ass'n v. Citicorp Acceptance Co.,* 103 N.C.App. 762, 407 S.E.2d 251, 252, disc. review denied, 330 N.C. 197, 412 S.E.2d 59 (N.C.1991). G.S. § 20–4.01(23) defines a motor vehicle as "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." In *King Homes,* the North Carolina Supreme Court recognized that "[a] mobile home is classified by statute as a motor vehicle" since it is designed to run upon the highways while being pulled by a self-propelled vehicle. 159 S.E.2d at 332; *construed in In re Meade,* 174 B.R. at 51. It has likewise been recognized in this district that "[a] security interest in a mobile home is subject to the same perfection requirements as is an automobile." *See Carter v. Holland (In re Carraway),* 65 B.R. 51, 55 (Bankr. E.D.N.C.1986) (Small, C.J.).

G.S. § 20–58 et seq. sets forth the exclusive means for perfecting a security interest in a motor vehicle. Pursuant to G.S. § 20–58(1), a security interest in a motor vehicle requiring registration and a certificate of title may be perfected only by proper notation on the certificate of title. However, a motor vehicle is not subject to the perfection requirements of G.S. § 20–58 unless it is required to be registered with the Division. G.S. § 25–9–302(1)(d) explicitly states that only motor vehicles "required to be registered" must comply with G.S. § 20–58 et seq. Therefore, the crucial issue before the court is whether the mobile home in the present case is "required to be registered" under G.S. § 25–9–302(1)(d) and thereby subject to the perfection requirement of proper notation on the certificate of title prescribed in G.S. § 20–58.

G.S. 20–50 governs whether a motor vehicle is required to be registered. This statute reads in relevant part:

(a) Except as otherwise provided in this Article, every owner of a vehicle *intended to be operated upon any highway of this State* and *required by this Article to be registered* shall, before the same is so operated, apply to the Division for and obtain the registration thereof, the registration plates therefore and a certificate of title therefore . . . .

N.C. GEN. STAT. § 20–50(a) (1998) (Emphasis added). A plain reading of this statute indicates that two requirements must be met before a motor vehicle is required to be registered. First, the owner of the vehicle must intend to operate the vehicle upon any highway in North Carolina. Second, the vehicle must otherwise be required to be registered under Chapter 20, Article 3 of the North Carolina General Statutes, commonly referred to as the North Carolina Motor Vehicle Act of 1937. After extensive review of each provision contained in Article 3, the court finds no provision, except G.S. § 20–83(c) dealing with non-residents, which otherwise explicitly requires registration of motor vehicles.

The trustee argues that G.S. § 20–51, which exempts certain motor vehicles from registration, necessarily implies that vehicles which are not exempted from registration are otherwise required to be registered. Since the mobile home in the present case is not exempted under G.S. § 20–51, the trustee asserts that it is necessarily required to be registered under G.S. § 20–50(a). As required to be registered, the trustee concludes that the mobile home is subject to G.S. § 25–9–302(1)(d) and thus Green Tree's sole method of perfection was by notation on the certificate of title pursuant to G.S. § 20–58.

■ The court agrees with the trustee that the second element of G.S. § 20–50(a), i.e. "required by this Article to be registered," is satisfied where a motor vehicle is not exempted under G.S. § 20–51. Although not explicitly set forth in the statute, the court finds that the G.S. § 20–51 exemptions implicitly require registration of motor vehicles not specifically exempted. However, the court disagrees with the trustee that G.S. § 25–9–302(1)(d) refers exclusively to the second element of G.S. § 20–50(a), rather G.S. § 20–50(a) in its entirety. As stated above, G.S. § 20–50(a) sets forth a two-part inquiry for determining whether a motor vehicle is "required to be registered" under G.S. § 25–9–302(d)(1). First, the owner must intend to operate the vehicle on the highways of North Carolina. Second, the motor vehicle must be required to be registered under Article 3, i.e. not exempted under G.S. § 20–51. It is clear that both these conjunctive elements must be met before a motor vehicle is required to be registered. Accordingly, the court finds that the "motor vehicles required to be registered" language found in G.S. § 25–9–302(1)(d) refers only to those motor vehicles which have satisfied both elements under G.S. § 20–50(a). To illustrate, under G.S. § 20–50(a), a motor vehicle which is intended to be operated on the highway, but exempted from registration by virtue of G.S. § 20–51, is not required to be registered under G.S. § 20–50(a) and thus not subject to G.S. § 25–9–302(1)(d). Conversely, a motor vehicle which is not intended to be operated on the highway is not required to be registered for purposes of G.S. § 25–9–302(1)(d) regardless of whether it is otherwise required under Article 3. Only motor vehicles which are (1) intended to be

operated on the highway *and* (2) required under Article 3 to be registered (whether required by Article 3 explicitly or implicitly, by not qualifying for exemption under G.S. § 20–51) are required to be registered under G.S. § 20–50(a) and thus implicated by G.S. § 25–9–302(1)(d). Although the trustee's policy arguments against predicating perfection upon an owner's subjective intent to transport a mobile home on the highway have some force, such arguments are better addressed to the legislature.

Several North Carolina cases support this construction of G.S. 20–50(a). North Carolina courts have consistently focused on the intent to operate a motor vehicle on the highway in determining whether it is required to be registered. In *King Homes*, the North Carolina Supreme Court held "[a] mobile home is designed to be operated upon the highways; and an owner who intends to so operate it is required to make application to the Department of Motor Vehicles for, and obtain, the registration thereof and issuance of a certificate of title for such vehicle." 159 S.E.2d at 332; *accord Peoples Sav. & Loan Assoc.*, 407 S.E.2d at 252–53. Extending the proposition cited in *King Homes*, the court in *In re Meade* held that "if the owner does not intend to operate the mobile home on the highway, he or she is not required to register it with the Department of Motor Vehicles." 174 B.R. at 53.

In this case, the mobile home in question is not exempted from registration either under G.S. § 20–51 or any other provision in Article 3, and is therefore required to be registered under the second element of G.S. § 20–50(a). The only remaining inquiry before the court is whether, under the first element of G.S. § 20–50(a), the debtors intended to operate the mobile home on the highways.[1]

The court finds guidance from the well-reasoned analysis in *Meade* which involved facts substantially similar to the present case. In *Meade*, a mobile home dealer purchased a mobile home from a manufacturer and permanently affixed it to a real estate lot which the dealer owned. 174 B.R. at 50.

The dealer subsequently sold the lot and mobile home to the debtors. *Id.* The debtors financed this purchase through a loan with a mortgage company, and as security for the debt, granted the mortgage company a deed of trust to the real estate including improvements thereto. *Id.* The deed of trust was duly recorded in the register of deeds' office. *Id.* At no time did the dealer nor the debtors make application for a certificate of title. *Id.* at 51. Upon the debtor's bankruptcy filing, the trustee sought to avoid the mortgage company's lien on the mobile home on the grounds that notation on the certificate of title is the sole method of perfecting a security interest in a mobile home. *Id.* at 50. In response, the mortgage company argued that the mobile home was permanently affixed to the real property at the time of the conveyance and is therefore subject to the encumbrance created by its deed of trust. *Id.*

The *Meade* court framed the issue as whether either the dealer or debtors were required to register the mobile home under G.S. § 20–50(a) such that notation on the certificate of title was the sole method of perfection under G.S. § 20–58. 174 B.R. at 51. Determining that the dealer was excepted from any registration requirement by virtue of G.S. § 20–79, the *Meade* court narrowed its focus on whether the debtors were nonetheless required to register the mobile home. *Id.* The deed of trust holder argued that since the mobile home was permanently affixed to the property, the parties did not intend for it to be operated on the highway and thus, failing the first element of G.S. § 20–50(a), was not required to be registered. *Id.* Noting support for this argument under North Carolina case law, the *Meade* court agreed and held that where an owner does not intend to operate a mobile home on the highway, he or she is not required to register it under G.S. § 20–50(a). *Id.* at 53 (relying on *King Homes*, 159 S.E.2d at 332 and *Peoples Sav. & Loan Ass'n*, 407 S.E.2d at 253). Applying its facts to this framework, the *Meade* court found that the debtors did not intent to operate the mobile home

---

1. The court notes that the "intent" to operate on the highway is the proper inquiry before the court, rather than the mere "capability" of being operated on the highway as advocated by the trustee.

on the highway since the mobile home was permanently affixed to land when the property was conveyed and the parties intended the transaction to be one involving the sale of real property. *Id.* at 54.

Like *Meade,* the mobile home in the present case was expressly intended to be secured by the deed of trust. The deed of trust states in pertinent part:

Borrower irrevocably grants and conveys ... the following described property located in Pender County, North Carolina:

All of the property located at 113 Winchester Lane, in the City/Town/Village of Rocky Point, County of Pender, State of NC, in which the Borrower has an ownership, leasehold or other legal interest. This property is more particularly described on the schedule titled "Additional Property Description" which is attached hereto as Exhibit A,

TOGETHER WITH a security interest in that certain 1997, 40 × 28 Heartland home, serial number HHINC4160AB.

Prior to execution of the security agreement and deed of trust, the mobile home was permanently affixed to the land by pouring footers and placing it on a brick foundation. The mobile home was also connected to water and septic facilities located on the real estate. Based on the totality of the evidence, the court finds that the mobile home was sufficiently affixed to the real estate so as to evidence a clear intent by the debtors not to operate it on the highway. As such, the first element of G.S. § 20–50(a) has not been satisfied and the mobile home is not "required to be registered" for purposes of G.S. § 25–9–302(1)(d). Because the mobile home is not therefore subject to the registration and certificate of title requirements of G.S. § 20–58, Green Tree has a valid lien against both the mobile home and real property pursuant to the properly recorded deed of trust. Accordingly, the trustee is entitled to no relief in this action.

**So Ordered.**